IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HARRY J. COLES, #A1075332, | ) | CIV. NO. 15-00368 JMS/RLP |
| | ) | |
| Plaintiff, | ) | ORDER DISMISSING COMPLAINT |
| | ) | IN PART PURSUANT TO 28 U.S.C. |
| vs. | ) | §§ 1915(e)(2) & 1915A(b) |
| | ) | |
| DR. LORI KARAN, MS. | ) | |
| DEBORAH STAMPFLE, | ) | |
| C.S.B.A., DR. SISAR PADERES, | ) | |
| DR. BARNEY TOYAMA, MS. | ) | |
| IRENE REVILLE, RN (C.S.A.), | ) | |
| JOHN AND JANE DOES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER DISMISSING COMPLAINT IN PART
## PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)

Before the court is pro se Plaintiff Harry J. Coles' prisoner civil rights

Complaint.  Doc. No. 1.  Coles is incarcerated at the Halawa Correctional Facility

("HCF").  Coles names past and present Hawaii Department of Public Safety

("DPS") health care staff as Defendants, including Health Care Director Lori

Karan, MD; Clinical Services Administrator Deborah Stampfle; Sisar Paderes,

MD; Barney Toyama, MD; Irene Reville, RN; and John and Jane Does 1-5, in

their individual and official capacities.  Coles alleges that Defendants denied him

adequate medical care and discriminated against him in doing so, in violation of

the Eighth and Fourteenth Amendments to the United States Constitution.

The Complaint is DISMISSED IN PART pursuant to 28 U.S.C.

§§ 1915(e)(2) & 1915A(b).  Coles may elect to amend those claims dismissed

below without prejudice OR he may elect to stand on those claims deemed

cognizable and forfeit the dismissed claims with prejudice.

## I.  BACKGROUND

Coles alleges two causes of action.  In Count I, Coles alleges that DPS

medical staff at HCF, Waiawa Correctional Facility ("WCF"), and the Oahu

Community Correctional Center ("OCCC") denied him medical treatment for his

Stage 2 Hepatitis C viral infection ("HCV"), in violation of the Eighth

Amendment.

In Count II, Coles first alleges that DPS medical officials violated the Equal

Protection Clause of the Fourteenth Amendment when they refused to treat his

HCV infection at WCF or OCCC, although they treated other inmates with

different chronic medical conditions at these facilities, and had previously treated

inmates with HCV.  He next alleges that Defendants discriminated against him as

an African-American after he transferred to HCF, where they had told him that

HCV treatment was available, but when he arrived they put him on a waiting list for the treatment.

As background, Coles explains that on or about May 22, 2013, prison officials cancelled three psychotropic medicines he was taking over concern for their toxic effects on his liver, but continued his Depakote prescription.[1]  Doc. No. 1-1, PageID #23.  Coles alleges that standard medical protocol dictates that he should have had blood tests every three to four months thereafter, but WCF medical staff failed to perform such tests until he showed symptoms of liver toxicity.  *Id.*  On or about October 7, 2013, however, Defendant WCF Dr. Paderes sent Coles to the Queen's Medical Center ("QMC") for a liver biopsy after his blood test showed high liver toxicity.  Dr. Paderes allegedly told Coles that if his biopsy revealed HCV, he could be treated at WCF.  *Id.*  On or about October 18, 2013, QMC liver specialist Dr. Marina M. Roytman diagnosed Coles with HCV Stage 2.  On November 19, 2013, Coles quit his WCF workline job due to "extreme exhaustion."  *Id.* PageID #24.

Coles states that between November 21 and December 6, 2013, Defendant DPS Health Director Dr. Karan and the DPS "Special Utilization Review Panel"

---

[1] Depakote is used to treat Bipolar Mania.  *See* https://www.depakote.com.

3

("SURP") unanimously approved Dr. Roytman's "Diagnosis & prognosis," approving a twelve week regimen of oral medication for HCV.  *Id.*

On or about December 19, 2013, Coles met with Dr. Karan and Defendant Irene Reville, RN, to discuss his desire to begin treatment immediately at WCF. *Id.*  Dr. Karan and Reville allegedly agreed that Coles qualified for treatment, but explained that such treatment was available only at HCF, a higher security facility than WCF.  Reville later allegedly told Coles that HCV treatment was once offered at WCF but this practice had been discontinued, and if he wanted the HCV treatment, he must voluntarily forfeit his minimum and community custody status at WCF and agree to transfer to HCF.  *Id.* at PageID #25.  Reville suggested that Coles could delay treatment until after his release if he did not want to transfer to HCF.  *Id.* at PageID #26.

Coles nonetheless requested to receive the treatment at WCF or OCCC, which he alleges have twenty-four hour infirmaries and monitor inmates with other chronic medical conditions, such as diabetes, asthma, and mental infirmities. Coles asserts that he was singled out because he had HCV, and argued that he

4

could not participate in the pre-release programs required for parole if he transferred to HCF, such as work furlough.[2]

On June 4, 2014, Coles was transferred to OCCC. *Id.* at PageID #27.  He complains that neither WCF nor OCCC ever edited his health status report to reflect his "new" HCV Stage 2 diagnosis. *Id.*  Coles says he continued to experience acute and chronic HCV symptoms, and continued to request HCV treatment, but Defendants OCCC physician Dr. Barney Toyama and OCCC medical staff denied his requests because the treatment remained available only at HCF. *Id.*

Coles says he was unable to participate in the OCCC work furlough program due to its physical demands, and was therefore transferred to HCF on or about November 9, 2014. *Id.* at PageId #28.  Once at HCF, Coles requested to begin the HCV treatment, but was told that he could only be added to the lengthy waiting list for the treatment, due to medical staffing and budget shortages.

On or about June 15, 2015, Dr. Karan wrote Coles, explaining that "due to limited funding for (new) Med. (tx) is currently reserved for inmates who are most ill & cannot wait for treatment." *Id.* at PageID #29.  Dr. Karan informed Coles

---

[2] As noted, Coles had already quit his workline job at this point.  He identifies no other programs that he was participating in at WCF.

that his medical condition "does not appear extreme enough to warrant med.

intervention," and denied Coles HCV treatment. *Id.* Dr. Karan also explained

that, at the time the treatment was new it was available only at HCF, so that the

inmates on the treatment could be carefully monitored, but because the treatment

was now considered safe, it was available at any DPS facility. *Id.* Coles asserts

this constitutes discrimination, because he knows of another white HCF inmate

with HCV who has similar symptoms who is being treated at HCF.

Coles commenced this action on September 18, 2015. He alleges that

Defendants' failure to provide him HCV treatment threatens his health and is

causing severe damage to his liver. Coles seeks declaratory relief that Defendants

violated his constitutional rights, injunctive relief providing him with the HCV

treatment protocol, and compensatory damages.

## II.  SCREENING

The court must screen all civil actions brought by prisoners proceeding in

forma pauperis or seeking redress from a government entity, officer, or employee.

28 U.S.C. §§ 1915(e)(2) & 1915A(a). Complaints or claims that are frivolous,

malicious, fail to state a claim, or seek relief from a defendant who is immune

from such relief must be dismissed. 28 U.S.C. §§ 1915(e)(2) & 1915A(b); 42

U.S.C. § 1997e(c)(1).

A complaint that lacks a cognizable legal theory or alleges insufficient facts under a cognizable legal theory fails to state a claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To state a plausible claim, a plaintiff must plead facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations that are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-80. The court must then consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, the claim may proceed. *Id.* at 680.

7

Plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (internal quotation marks omitted).  A court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  The court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). "[C]onclusory allegations of law and unwarranted inferences are insufficient." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.

Leave to amend should be granted if it appears the plaintiff can correct the defects in the complaint.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).  When it is clear the complaint cannot be saved by amendment, however, dismissal without leave to amend is appropriate.  *Sylvia Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

### III.  DISCUSSION

To state a civil rights claim under 42 U.S.C. § 1983, a plaintiff "must allege the violation of a right secured by the Constitution and laws of the United States,

and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## A.    Immunities

Defendants named in their official capacities are not persons subject to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Flint v. Dennison*, 488 F.3d 816, 824-25 (9th Cir. 2007). The only exception is "for prospective declaratory and injunctive relief against state officers, sued in their official capacities, to enjoin an alleged ongoing violation of federal law." *Young v. Hawaii*, 911 F. Supp. 2d 972, 983 (D. Haw. 2012) (quoting *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000)); *see Ex parte Young*, 209 U.S. 123 (1908).

To the extent Coles names Defendants in their official capacities for monetary damages, those claims are DISMISSED with prejudice.

## B.    Eighth Amendment:  Denial of Medical Care

To state a § 1983 medical claim, a plaintiff must show that the defendants acted with "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the

unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent. *Id.* (quotations omitted).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. *See, e.g.*, *Wood v. Housewright*, 900 F.2d 1332, 1337-41 (9th Cir. 1990) (citing cases); *Hunt v. Dental Dept.*, 865 F.2d 198, 200-01 (9th Cir. 1989); *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Techs. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). At this stage, the court accepts that Coles' HCV Stage 2 diagnosis, particularly in light of his claims that he still experiences extreme fatigue, stomach pains, diarrhea, nausea, and dizziness, constitutes a serious medical need. *See* Doc. No. 1-1, PageID #24.

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). To act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a

substantial risk of serious harm exists, and he must also draw the inference."

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  Deliberate indifference in the

medical context may be shown by a purposeful act or failure to respond to a

prisoner's pain or possible medical need and harm caused by the indifference.

*Jett*, 439 F.3d at 1096.  Deliberate indifference may also be shown when a prison

official intentionally denies, delays, or interferes with medical treatment or by the

way prison doctors respond to the prisoner's medical needs.  *Estelle*, 429 U.S. at

104-05; *Jett*, 439 F.3d at 1096.

A physician need not fail to treat an inmate altogether to violate the Eighth

Amendment.  *Ortiz v. City of Imperial*, 884 F.2d 1312, 1314 (9th Cir. 1989).  A

failure to competently treat a serious medical condition, even if some treatment is

prescribed, may constitute deliberate indifference in a particular case.  *Id.*

However, "[a] difference of opinion between a physician and the prisoner -- or

between medical professionals -- concerning what medical care is appropriate does

not [without more] amount to deliberate indifference."  *Snow v. McDaniel*, 681

F.3d 978, 987 (9th Cir. 2012), *overruled on other grounds*, *Peralta v. Dillard*, 744

F.3d 1076, 1083 (9th Cir. 2014).

To establish that a difference of opinion rises to the level of deliberate

indifference, a prisoner must show that the defendant's chosen course of treatment

was medically unacceptable and in conscious disregard of an excessive risk to plaintiff's health. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). In cases involving complex medical issues where a plaintiff contests the type of treatment he received, expert opinion will almost always be necessary to establish the necessary level of deliberate indifference. *Hutchinson v. United States*, 838 F.2d 390, 393-94 (9th Cir. 1988).

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835; *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104.

### 1. *No Deliberate Indifference Shown at WCF and OCCC*

Coles says that he is incarcerated pursuant to two consecutive five-year terms and that he was receiving psychotropic medications during this time, indicating that he was receiving some medical care. He further admits that prison officials monitored him for liver toxicity no later than May 22, 2013, when they removed three psychotropic medications from his treatment plan to lessen or prevent possible liver damage. He complains that they continued Depakote, and

12

concludes that Depakote's possible harm outweighed its benefits.  This, however, is simply a conclusory statement and represents nothing more than a difference of opinion between Coles and prison medical providers.

Coles admits that Dr. Paderes sent him to QMC for tests less than five months after they discontinued his medicines, indicating that he was being monitored for liver disease during that time.  Coles says that within ten days, Dr. Roytman diagnosed him with HCV Stage 2, and Dr. Karan and the DPS SURP panel then approved him for HCV treatment.  He does not dispute that all Defendants offered him HCV treatment at HCF.  And Coles does not allege that Defendants refused to transfer him to HCF to begin treatment.  Rather, Coles asserts that he should have been allowed to receive the HCV treatment at WCF or OCCC.

Coles further admits that Dr. Karan explained that the HCV treatment was offered only at HCF initially, because it was new, unproven, experimental, and therefore the DPS Health Care Department wanted to closely monitor all inmates on the protocol.  Coles, however, refused to transfer to HCF for the treatment because he would lose privileges he had at WCF, such as work and community custody status.

Clearly, this is simply a dispute between Coles and Defendants regarding where and how he should receive treatment.  Defendants did not deny or purposely delay Coles HCV treatment; instead, Coles refused treatment unless it was provided under his own conditions at the prison medical facility of his choice. While prison officials must provide inmates adequate medical care, they cannot be required to provide every type of care in every state prison.

Coles further fails to bear his burden of pleading that there was no legitimate correctional goal or policy for requiring treatment to initially be given only at HCF until its effectiveness and safety was assured.  *See Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (holding that a plaintiff must plead and prove the absence of legitimate reasons for the challenged conduct).  This court has a duty to avoid "becom[ing] increasingly enmeshed in the minutiae of prison operations," that is, to second guess DPS' medical decision to provide HCV treatment at HCF. *See Bell v. Wolfish*, 441 U.S. 520, 562 (1979); *Wright v. Rushen*, 642 F.2d 1129, 1132 (9th Cir. 1981) (denying injunctive relief beyond what is necessary to correct conditions that violate the Eighth Amendment); *Florer v. Hoffman*, 2015 WL 5768946, at *5 (D. Haw. Sept. 29, 2015) (declining to interfere in prison's housing and classification decisions to allegedly protect inmate's Eighth Amendment rights).

14

Finally, Coles voluntarily quit his WCF workline position and apparently could not physically qualify for another job.  And, Coles has no constitutional right to a job, programs, parole, or a particular classification status.  *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (holding that  prisoners have no constitutional right to a particular classification status); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007) (same); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir. 1997) (holding prisoners have no constitutional right to employment);  *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979) (holding there is no constitutional right to parole).  It is therefore difficult to justify how Coles' desire to remain at WCF and OCCC, and his alleged desire for immediate treatment, can supercede the DPS' goal of effectively monitoring all inmates receiving HCV treatment at HCF.

Coles fails to state a claim that any Defendant was deliberately indifferent to his serious medical needs while he was incarcerated at WCF and OCCC.  These claims are DISMISSED without prejudice.

### 2.    *Deliberate Indifference at HCF*

Coles states that he was repeatedly told that if he transferred to HCF, he could begin HCV treatment.  When he was transferred to HCF, however, he was denied such treatment.  It is possible that Coles' condition had improved by this

time and this was a reasoned decision made by HCF health care providers. The

changed diagnosis may also be a reasonable disagreement regarding the need for

treatment between HCF physicians in 2014 and 2015, and Dr. Roytman's, Dr.

Paderes', Dr. Toyama's, and the DPS SURP's 2013 diagnoses for treatment.

These are issues to be resolved on a fuller record during adversary proceedings.

Coles' claim that he was denied medical care at HCF with deliberate

indifference to his health states a claim and shall proceed against Dr. Karan,

Deborah Stampfle, and Doe Defendants 1-5 (after they are adequately identified as

set forth below).

**C.      Fourteenth Amendment: Equal Protection Claims**

A plaintiff can state an equal protection claim in two ways. First, the

plaintiff can allege that "defendants acted with an intent or purpose to discriminate

against the plaintiff based upon membership in a protected class." *See Barren v.*

*Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998) (citing *Washington v. Davis*,

426 U.S. 229, 239-40 (1976)). If the challenged acts do not involve a suspect

classification, the plaintiff can establish an equal protection "class of one" claim

by alleging that he or she was "intentionally treated differently from others

similarly situated and that there is no rational basis for the difference in

treatment." *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Squaw*

16

*Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004), *overruled on other grounds by Action Apartment Ass'n v. Santa Monica Rent Control Bd.*,509 F.3d 1020, 1025 (9th Cir. 2007).

### 1.   No Discriminatory Treatment at WCF and OCCC

First, Coles' allegations do not support an Eighth Amendment claim as discussed above.  Absent such a constitutional violation, there was no discriminatory treatment.  Second, even if Coles could assert he was denied adequate health care with deliberate indifference at WCF or OCCC, he asserts no facts showing that this denial was because he was part of a protected class -- here, African-American.  Coles also fails to show that he is a class of one who is similarly situated to inmates with asthma, diabetes, mental illness, or any condition other than HCV Stage 2, who received chronic care at WCF and OCCC. Coles therefore fails to state a claim for discriminatory treatment in violation of the Equal Protection Clause at WCF and OCCC, and this claim is DISMISSED without prejudice.

### 2.   Equal Protection Claim at HCF

Coles alleges that he was denied HCV treatment when he transferred to HCF, despite Defendants' earlier statements that he qualified for such treatment and that he could begin such treatment if he voluntarily relinquished his work

furlough and community custody status (which qualified him to remain at WCF

and OCCC).  Coles asserts that another white inmate who exhibits the same

symptoms and side effects as Coles is receiving the HCV treatment at HCF.

It is possible that this inmate's condition is more serious than Coles, or that

this inmate had finally qualified to move off of the waiting list.  But these are

issues to be determined during adversarial proceedings.  Coles adequately alleges

that he was discriminated against in violation of the Equal Protection Clause at

HCF, and this claim shall proceed against Dr. Karan, Deborah Stampfle, and Doe

Defendants 1-5.

### D.    Doe Defendants

Coles is notified that Rule 10(a) of the Federal Rules of Civil Procedure

requires a plaintiff to include the names of all parties in the action in the caption.

As a practical matter, it is impossible in most instances for the United States

Marshal or his designee to serve a summons and complaint on an anonymous

defendant.  The use of doe defendants is therefore generally disfavored in the

federal court.  *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

If the names of individual defendants are unknown when the complaint is

filed, a plaintiff may refer to the unknown defendants as Defendant John Doe 1,

John Doe 2, John Doe 3, and so on, but he must generally allege facts to support

how each particular doe defendant violated the plaintiff's constitutional rights.  A

plaintiff may thereafter use the discovery processes to obtain the names of any doe

defendants he believes violated his constitutional rights and seek leave to amend

to name those defendants, unless it is clear that discovery would not uncover the

identities, or that the complaint would be dismissed on other grounds.  *Wakefield*

*v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie*, 629 F.2d at

642 (9th Cir. 1980)).

## IV.  <u>LEAVE TO AMEND</u>

Coles may file an amended complaint on or before November 30, 2015, that

cures the deficiencies in the claims dismissed in this Order without prejudice.  An

amended complaint generally supersedes the original complaint.  See *Loux v.*

*Rhay*, 375 F.2d 55, 57 (9th Cir. 1967), *overruled in part by Lacey v. Maricopa*

*Cty.*, 693 F.3d 896 (9th Cir. 2012) (en banc).  Thus, while the court will not ignore

Coles' original statement of facts, an amended complaint should stand on its own

without incorporation or reference to a previous pleading.  Defendants not named

in the caption and claims dismissed without prejudice that are not realleged in an

amended complaint may be deemed voluntarily dismissed.  *See Lacey*, 693 F.3d at

928 (stating that claims dismissed with prejudice need not be repled in an

amended complaint to preserve them for appeal, but claims that are voluntarily

19

dismissed are considered waived if they are not repled.). Failure to amend these claims will result in their dismissal from this action with prejudice. The court will then order service of the Complaint minus those claims.

In the alternative, Coles may NOTIFY the court on or before November 30, 2015, that he chooses to proceed with the claims that have not been dismissed by this Order. Upon receipt of such notice, the dismissed claims will be deemed dismissed with prejudice and the court will order the U.S. Marshal to serve the original Complaint, a copy of this order, and Coles' election to proceed without amendment and forfeit the dismissed claims with prejudice.

## V.  <u>CONCLUSION</u>

(1) The Complaint is DISMISSED IN PART for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b). Specifically, Coles' claims seeking damages against Defendants in their official capacities are DISMISSED with prejudice. Coles' claims against all Defendants regarding events that occurred at the Waiawa Correctional Facility and the Oahu Community Correctional Center are DISMISSED with leave to amend on or before November 30, 2015. Failure to amend the Complaint on or before that date will result in dismissal of those claims with prejudice.

(2)  In the alternative, Coles may NOTIFY the court that he will stand on the claims remaining in his original Complaint, forfeiting the dismissed claims with prejudice, on or before November 30, 2015.  On receipt of such notice the court will order the U.S. Marshal to serve the Complaint.

(3)  The Clerk is directed to mail Coles a prisoner civil rights complaint form so that he can comply with the directions in this Order.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 3, 2015.



  /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Coles v. Karan, et al.*, Civ. No. 15-00368 JMS/RLP; Scrng 2015 15-337 (dsm in part, Hep C, EP); J:\PSA Draft Ords\JMS\Coles 15-368 jms (Hep C trtmt, EP).wpd